# GAISMAN *v.* GILLETTE.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE.

1. The mere making of a device consisting of a clamp for holding in position the blade of a safety razor amounts to a demonstration of utility and constitutes reduction to practice, where it is apparent from an inspection of the device that it will hold the blade in substantially the same relation to the guard as was accomplished by the old means, it being well known that a blade thus held can be operated successfully. (Following *Mason* v. *Hepburn,* 13 App. D. C. 86; *Couch* v. *Barnett,* 23 App. D. C. 446; *Schartow* v. *Schleicher,* 35 App. D. C. 347.)

2. The rights of an inventor who has reduced his device to practice are paramount to those who subsequently enter the field, unless there has been concealment or suppression amounting to abandonment. (Following *Rolfe* v. *Hoffman,* 26 App. D. C. 336; *Rose* v. *Clifford,* 31 App. D. C. 195.)

No. 685. Patent Appeals. Submitted January 11, 1911. Decided February 6, 1911.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are stated in the opinion.

*Mr. T. F. Bourne* for the appellant.

*Mr. Clifford E. Dunn, Mr. L. S. Bacon,* and *Mr. J. H. Milans* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal [by Henry J. Gaisman] from three concurrent decisions of the Patent Office tribunals in an inter-

ference proceeding in which priority of invention was awarded to King C. Gillette, the senior party.

The invention is narrow in scope, and relates particularly to holders for the blades of safety razors of well-known types. The counts are seven in number, but count 1 is typical of the group. It reads as follows:

"1. In a safety razor in combination a rectangular blade having one or more cutting edges, a guard or guards therefor, relatively movable spring-actuated clamping jaws tending normally to close, means receiving the edges of the blade, holding it fixed from displacement, and substantially unobstructed on its upper face, a handle extending from the plane of its lower face, and means projecting from one of the movable jaws whereby, holding the device in one hand, the clamping jaws may be operated to open and close, leaving the other hand free to remove or insert the blade."

Gillette testified that he conceived the invention in the spring of 1902, and that he then disclosed it to others. He further testified that thereafter he made a razor embodying the issue, and showed this razor to several persons, most of whom were called as witnesses to corroborate his testimony. It is not denied by counsel for Gaisman that Gillette has established conception of the invention and embodiment of the invention in a razor, as contended by Gillette. Each of the tribunals of the Patent Office so held, and we are satisfied, after a careful review of the testimony, that their ruling was correct.

It appears that the commercial development of the Gillette safety razor was in its infancy at the time of the conception of this invention, and that Gillette was more or less engaged with other matters. Subsequently, however, he arranged to give more or all of his attention to the safety razor business. Whereupon, early in October, 1904, he took the identical razor which he had made in 1902 to his counsel, and directed that an application for patent be filed thereon. Gillette then went to Europe, which caused some delay, but the application was finally filed January 18th, 1905.

Gaisman, in his preliminary statement, alleged the disclos-

ure of his invention in October, 1904, and in his testimony he stated that he then gave instructions to a workman to make a full-sized razor; that such razors embodying the issue were completed during December, 1904, one of which he gave to his attorney, with directions to apply for a patent. The application was filed June 10th, 1905. The earliest date that can be accorded Gaisman as a date of conception is some time in October, 1904. The evidence is indefinite as to just what part of the month, but, for the purposes of this opinion, we may concede that it was about the time that Gillette directed his attorney to prepare an application for patent on his structure.

The Examiner of Interferences ruled that the device was of such a nature as to require a test to demonstrate efficiency, and placed his ultimate decision upon a finding of diligence on the part of Gillette when Gaisman entered the field, and which the decision held continued until Gaisman's filing date. The Examiners-in-Chief ruled that the invention is of that character as that "the very construction of the device demonstrates its operativeness and utility; that there had been no abandonment, and that Gillette was entitled to an award of priority. Other questions were discussed in the opinion, but the decision of those questions is not important here. The Commissioner, in his decision, said: "Safety razors of the same character were admittedly old at the time Gillette's device was constructed, and the only question remaining was whether the clamp forming the essential part of the issue would properly hold the razor blade in place. I agree with the Examiners-in-Chief that 'a mere inspection of the completed article was sufficient to establish this point.' "

It is admitted that the safety razor art had been well developed when this specific invention was made. The only thing that was new in the device which Gillette produced was the means whereby the blade was held in position; in other words, the clamp. The blade was old, and the guard upon the holder which co-operated with the blade and imparted to the structure its element of safety was also old. A mere inspection of Gillette's device showed that it held the blade in substantially the

same relation to the guard as was accomplished by the old means. That a blade thus held could be operated successfully was well known. The making of the device, therefore, amounted to a demonstration of utility and constituted reduction to practice. Indeed, it would be difficult to find a clearer case of reduction to practice resulting from the construction of the device. See *Mason* v. *Hepburn,* 13 App. D. C. 86; *Couch* v. *Barnett,* 23 App. D. C. 446; *Schartow* v. *Schleicher,* 35 App. D. C. 347.

We rule, therefore, that Gillette's invention was complete in 1902; that his status as an inventor was then established. In such circumstances an inventor's rights are paramount to those who subsequently enter the field, unless there has been concealment or suppression amounting to abandonment. *Rolfe* v. *Hoffman,* 26 App. D. C. 336; *Rose* v. *Clifford,* 31 App. D. C. 195. In this case it is not even contended, much less proved, that Gillette's renewed activity early in October, 1904, was inspired by the knowledge that another had entered the field. Indeed, it is reasonably certain that Gaisman made no disclosure of the invention until a subsequent time. Having perfected his invention by reduction to practice, having taken steps to give the public the benefit of that invention at the time of Gaisman's entry into the field, we do not think Gillette's delay between reduction to practice and renewed activity can be said to amount to such a concealment or abandonment of the invention as to subordinate the right of Gillette to a patent to the right of Gaisman thereto.

Our conclusion upon this point renders it unnecessary to consider the case further, and the decision of the Commissioner will therefore be affirmed. The clerk will certify this opinion, as by law required.                               *Affirmed.*